ROCKWELL v CRESTWOOD SCHOOL DISTRICT
BOARD OF EDUCATION

1. LABOR RELATIONS—PUBLIC EMPLOYEES—STRIKES—STATUTES.

Public employees have neither a common-law nor a constitutional right to strike, and are in fact specifically denied the power to strike by statute (MCLA 423.202).

2. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—STATUTES—PUBLIC EMPLOYMENT RELATIONS ACT—TEACHERS—STRIKES.

Public school teachers are public employees, subject to the provisions of the public employment relations act and were engaged in a prohibited strike as defined by that act when they refused to report for work because of a dispute with the school board over negotiations for a collective bargaining agreement (MCLA 423.201).

3. LABOR RELATIONS—STATUTES—PUBLIC EMPLOYMENT RELATIONS ACT —STRIKES—EMPLOYERS—POWER TO DISCIPLINE.

A section of the public employment relations act by necessary inference gives public employers the power to discipline or remove employees who engage in a strike (MCLA 423.206).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1194, 1195, 1361.

Public employees labor law: right of public employees to strike or engage in work stoppage. 37 ALR3d 1147.

Union organization and activities of public employees. 31 ALR2d 1142.

[2] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1191, 1194, 1201, 1202.

[3, 6, 7] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1197.

[4, 5] 73 Am Jur 2d, Statutes § 392 *et seq.*

[6] 68 Am Jur 2d, Schools §§ 166, 168.

[7] 68 Am Jur 2d, Schools § 186.

Request for hearing, sufficiency under statute requiring hearing or request before discharge. 89 ALR2d 1018.

[7–9] What amounts to waiver of status or rights under teachers' tenure statutes. 145 ALR 1078.

Teachers' tenure statutes. 127 ALR 1298.

[8, 9] 68 Am Jur 2d, Schools §§ 210, 212.

4. STATUTES—CONSTRUCTION—REPEAL BY IMPLICATION.

The law does not favor repeals by implication where two statutes are in apparent conflict; only where no reasonable construction of the statutes involved permits a reconciliation or allows the purpose of each to be served is a repeal by implication properly found to have occurred.

5. STATUTES—CONSTRUCTION—PUBLIC EMPLOYMENT RELATIONS ACT—TEACHERS' TENURE ACT—IRRECONCILABLE DIFFERENCES.

The teachers' tenure act and the public employment relations act can be read as being consistent with one another with only two exceptions: (1) the public employment relations act reduces the time within which a hearing must be had and a decision made where discipline or dismissal is involved and (2) the public employment relations act provides an alternate appellate route to the circuit court rather than to the Teachers' Tenure Commission; in these two latter respects the public employment relations act prevails (MCLA 38.71 *et seq.*, 423.201 *et seq.*)

6. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—TEACHERS' TENURE ACT—PROSCRIBED ACTIVITY—DISCIPLINE.

A school board has the power under the public employment relations act to determine whether a schoolteacher has engaged in the type of activity proscribed by that act, and once a board has made such a determination it is required to follow the procedures of the teachers' tenure act if it desires to discipline that teacher (MCLA 38.71 *et seq.*, 423.206).

7. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS' TENURE ACT—PUBLIC EMPLOYMENT RELATIONS ACT—DISCIPLINE—PROCEDURE—REVIEW.

In a disciplinary action against a teacher, if formal written charges are filed by the school board and served upon him or her in conformity with the teacher's tenure act, the teacher shall have ten days within which to request a formal hearing, and such hearing shall be held in accordance with the teachers' tenure act; after the board's determination upon such hearing the teacher is entitled to review in accordance with the provisions of the public employment relations act.

8. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS' TENURE ACT—LABOR DISPUTE—CONTINUATION OF SERVICES.

Public school teachers involved in a labor dispute at a time when there is no contract with the employer have not, by reason of

such involvement, discontinued their services within the meaning of the teachers' tenure act (MCLA 38.111).

9. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—DISCHARGE OF TEACHERS—PROPER PROCEDURE.

Striking schoolteachers who were discharged by a school board when they failed to report to work or to submit their resignations pursuant to a deadline set by the board are entitled to be reinstated where the discharges were procedurally improper under the teachers' tenure act.

Appeal from Wayne, Joseph G. Rashid, Thomas Roumell, and George E. Bowles, JJ. Submitted Division 1 January 17, 1975, at Detroit. (Docket No. 22735.) Decided January 17, 1975. Leave to appeal granted, 393 Mich 793.

Complaint by George N. Rockwell and Violet P. Rockwell against the Board of Education of the School District of Crestwood, the Crestwood Education Association, and the individual schoolteachers in the district, to compel the board and the teachers to bargain in good faith, to compel the teachers to return to work, and enjoin the board from discharging the teachers. The Board of Education cross-complained against the association and the teachers, and the Rockwells were dismissed as parties plaintiff. An order and injunction were granted in favor of the board. The board subsequently discharged several teachers who resumed the strike and the association moved for an injunction against the board. Injunction granted. The board appeals by leave granted. Affirmed with modification and remanded.

*Royal G. Targan* (by *Edward L. Homeier*) (*Thrun, Maatsch & Nordberg,* of counsel), for defendant-cross-plaintiff Board of Education.

*Levin, Levin, Garvett & Dill* (by *Erwin E. Ell-*

*mann),* for defendant-cross-defendants Crestwood Education Association and teachers.

*Amici Curiae:*

*Clark, Hardy, Lewis & Fine, P. C.,* for Crestwood Civic Action Group.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.,* for Michigan State AFL-CIO.

Before: V. J. BRENNAN, P. J., and BASHARA and KELLY, JJ.

PER CURIAM. This is an appeal from the decision of a three-judge panel of the Wayne County Circuit Court. The panel held, by a two to one decision, that some 184 teachers had been improperly fired by the Board of Education of the Crestwood School District. The panel ordered that the teachers be reinstated. We granted the board an emergency appeal and issued an order staying the relief granted in Circuit Court. Because of the compelling importance of this case, we ordered accelerated filing of briefs and early disposition of the cause. In spite of the obvious time limitations, we have been favored with incisive briefs by the parties and the amici curiae.

The parties have been without a collective bargaining agreement since August of 1973. Between that time and this, negotiations have proved futile.

September 3, 1974, was the date on which the schools in the district were to reopen following the summer vacation. The teachers, members of the Crestwood Educational Association (CEA), refused to report for work. The situation thus remained in limbo until September 30, 1974, when plaintiffs initiated an action in Wayne County Circuit Court.

They sued as homeowners and taxpayers in the district and as the parents of school children in the district. Their complaint requested that the board and teachers be ordered to bargain in good faith. It was also requested that the teachers be ordered to return to work and that the board be enjoined from firing the teachers.

By stipulation of all concerned, the Rockwells were dismissed as parties plaintiff. The litigation continued, however, on the cross-complaint of the board. On October 8, 1974, Wayne County Circuit Court Judge Joseph G. Rashid ordered that the teachers return to work and that the board implement the terms of its proposed salary schedule. Specific orders designed to require intensive and serious negotiating were also entered. The terms of these orders were apparently respected and were supplemented by a further injunction against striking issued by Judge Rashid on October 22, 1974.

On December 4, 1974, the teachers again refused to report for work. Contempt proceedings followed, resulting in fines against certain teachers which were paid. Sixteen days later, the board adopted a resolution requiring the teachers to either report to their regular teaching assignments on Friday, December 27, 1974, or to submit a letter of resignation by 4:30 p.m. on December 27. It was further resolved that any teachers failing to exercise the option would have their employment terminated as of 11:59 p.m. on December 27, 1974. Copies of the resolution were served on the teachers.

Of the 222 teachers in the district, 38 reported for work. None submitted a letter of resignation. The remaining 184 teachers were, by board resolution of December 30, 1974, deemed to have terminated their employment. Substitute teachers were

hired by the board on a day-to-day basis, however the board conceded at oral argument that as of this date the classes are not fully-staffed on a full-time basis.

The teachers, through the CEA, responded by filing with the Michigan Employment Relations Commission (MERC) a charge that the board had failed to collectively bargain in good faith and had attempted by its actions to destroy and interfere with the CEA in violation of §§ 7 and 10 of the public employment relations act (PERA), formerly known as the Hutchinson Act, MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* This charge followed a previous CEA charge against the board. Both charges are presently pending before MERC and are not directly involved in the case before us.

The teachers also responded to the December 30 resolution by a letter to the board dated January 6, 1975, wherein the teachers requested individual hearings before the board in accord with § 6 of PERA, MCLA 423.206; MSA 17.455(6). It was specified in the letter that the request for a hearing was not to be construed as a waiver of any other employee rights. On January 6, 1975, the CEA moved in Circuit Court for an injunction to prevent the board from relying on the December 30 resolution and to prevent the board from terminating any teacher in a manner other than that set out in the teachers' tenure act, MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

The presiding judge of Wayne County Circuit Court appointed a three-judge panel consisting of Judge Rashid, Judge Thomas Roumell and Judge George Bowles to hear the motion. Judges Bowles and Roumell decided that the provisions of the teachers' tenure act controlled and that the purported firings were of no effect because of non-

compliance with the teachers' tenure act. Judge Rashid filed a cogent, persuasive dissent finding that PERA controlled and that the teachers were discharged in compliance with that act. It is from the order granting CEA's motion for an injunction that the board appeals.

It is well settled that there is neither a common-law nor a constitutional right of public employees to strike. *Detroit v Division 26, AASER,* 332 Mich 237; 51 NW2d 228 (1952). Moreover, in this State, public employees are specifically denied the power to strike by § 2 of the public employment relations act.

That act defines a public employee as, among others, a person "in the public school service". MCLA 423.202; MSA 17.455(2). It is undisputed that these teachers are public employees subject to the provisions of the act.

Section 1 of the act defines a "strike" as:

"Strike means the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment, for the purpose of inducing, influencing, or coercing a change in the conditions, or compensation, or the rights, privileges, or obligations of employment." MCLA 423.201; MSA 17.455(1).

The circuit court panel found, and we agree, that the teachers were engaged in a strike prohibited by the act and thus, we believe, became subject to the provisions of § 6 of PERA.

By necessary inference that section gives public employers the power to discipline or remove employees who engage in a strike. It refers to "the officer or body having power to remove or discipline such employee", and refers to cessation of compensation or imposition of other discipline.

Furthermore, § 6 says, "If the employee involved is held to have violated this law and his employment terminated * * * ." MCLA 423.206; MSA 17.455(6). As originally enacted, PERA provided for automatic termination of employment. 1947 PA 336, § 4. While that provision was repealed by 1965 PA 379, we do not believe it in any way detracted from the board's authority in this area. We believe it simply made the discipline of a striking employee discretionary with the employer under § 6.

Our central concern on this appeal, once having determined that the PERA grants the board the authority to discharge a striking teacher, is to determine the manner in which such disciplinary action may be taken. In performing our duty in this regard we are guided by what our Supreme Court said in *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 373; 184 NW2d 201 (1971):

"This is not to say that the act of 1965 repeals outright the act of 1941. Respecting as always our long since declared and regularly maintained rule that repeals by implication are not favored, and that it is only when the two measures in view are so incompatible that both or all cannot fully stand, we can only find that this is a striking instance for application of that rule which, back in 1877, was written into the Court's opinion of *Breitung v Lindauer,* 37 Mich 217, 233 (1877):

" 'The rule is that the latter act operates *to the extent of the repugnancy,* as a repeal of the first, or, if the two acts are not in express terms repugnant, yet if the latter *covers the whole subject of the first,* and contains new provisions showing that it was intended as a substitute, it will operate as a repeal.' " (Footnote omitted.)

The important point made in the above quota-

tion is that the law does not favor repeals by implication. It is only where no reasonable construction of the statutes involved permits of reconciliation or allows the purpose of each to be served that a repeal by implication is properly found to have occurred. *Detroit Police Officers Association v Detroit*, 391 Mich 44; 214 NW2d 803 (1974).

In an attempt to perform our function in this regard, we have exhaustively considered the contentions of all parties regarding the proper interpretation of these two statutes. MCLA 423.206; MSA 17.455(6) provides:

"Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. The decision of the proceeding shall be made within 10 days. If the employee involved is held to have violated this law and his employment terminated or other discipline imposed, he shall have the right of review to the circuit court having jurisdiction of the parties, within 30 days from such decision,

for determination whether such decision is supported by competent, material and substantial evidence on the whole record."

In contrast the teachers' tenure act provides, in pertinent part:

"The controlling board, if it decides to proceed upon such charges, shall furnish the teacher with a written statement of the charges including a statement of the teacher's rights under this article, and shall, at the option of the teacher, provide for a hearing to take place not less than 30 nor more than 45 days after the filing of such charges." MCLA 38.102; MSA 15.2002.

"Any hearing held for the dismissal or demotion of a teacher, as provided in this act, must be concluded by a decision in writing, within fifteen [15] days after the termination of the hearing. A copy of such decision shall be furnished the teacher affected within five [5] days after the decision is rendered." MCLA 38.104(f); MSA 15.2004(f).

"A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission." MCLA 38.121; MSA 15.2021.

It is our considered opinion that irreconcilable repugnancies exist between these acts in only two respects:

(1) § 6 reduces the time for hearing and decision to the 10 day provisions stated therein;

(2) § 6 provides an alternate appellate route—to circuit court, rather than to the State Tenure Commission, as provided for in Article 6, § 1 of the tenure act.

In these two respects, and these two respects only, the provisions of § 6 of the PERA prevail. The remainder of the provisions can be read as being consistent with one another.

Under § 6 of PERA the school board has the

power to determine whether a schoolteacher has engaged in the type of activity proscribed by the act. Once the board has made such a determination, it is required to follow the procedures outlined in the teachers' tenure act if the board desires to discipline the teacher. In the event formal written charges are filed against the teacher and served upon him or her in conformance with MCLA 38.102; MSA 15.2002, the teacher shall have ten days within which to request a formal hearing. If such a hearing is requested, it shall be held in accordance with the provisions of the teachers' tenure act. After the board reaches a determination upon such a hearing, the employee is entitled to review in accordance with the provisions of § 6 of PERA.

The board argues that teachers involved in a labor dispute have thereby discontinued their services within the meaning of Article V, § 1 of the teachers' tenure act. This argument is without merit. In *Holland School District v Holland Education Association,* 380 Mich 314; 157 NW2d 206 (1968), the teachers argued, *inter alia,* that since there was no contract they, as a matter of law, could not be employees and thus could not be subject to the injunctive powers of the court. The Supreme Court by remanding the case for further factual determinations on the issuance of an injunction necessarily concluded that the teachers were employees. The inference drawn from *Holland, supra,* and we so hold, is that teachers involved in a labor dispute have not discontinued their services. See OAG 1970, No 4704, p 150 (June 24, 1970).

The school board, by not following the procedures outlined above, discharged the striking school teachers in a procedurally improper man-

ner. That being the case, it is clear the teachers are entitled to be reinstated. The case should not end here, however.

In the bitter, sanguinary struggle between these parties it is apparent that the orders of the trial judge were blatantly ignored. The purpose of the tenure act is to prohibit the arbitrary abuse of power and the teachers herein seek to interpose that act to vindicate their own arbitrary abuse of the lower court orders. All three judges in the trial court agreed that both parties were in "open, flagrant defiance and in violation of [Judge Rashid's] orders". The court below observed that we are "reaping the wild whirlwind of a very inadequate law as pertaining to such disputes". However, in light of the present confusion prevailing in this area, the lower court judges obviously felt restricted in fashioning an appropriate remedy to handle this all too familiar situation.

We must resist abuses of the judicial system wherein the parties seem to want to handle the power of the court like a spigot; turn it off when it doesn't suit their interests (ignore, violate, flaunt injunctive orders), turn it on when it appears to suit their interests (seek enforcement of a return-to-work order which has been standing in prominent violation).

The lower court here attempted in various ways to bring this dispute to a speedy conclusion so that both the teachers and the board could get back to their primary function—educating the children enrolled in their schools. Both sides to this dispute, through their intransigence, have demonstrated to the satisfaction of this Court that to simply order the reinstatement of the fired teachers would not adequately resolve any of the problems underlying this controversy. What is needed is the establish-

ment of a procedure whereby these issues may be resolved so that the teachers, the board, the children and the community may begin the process of healing the wounds which have festered for so long. In pursuit of this end we hereby invoke the broad range of powers vested in this Court by GCR 1963, 820.1(7) and MCLA 600.310; MSA 27A.310 and order that the parties effect a full resumption of educational activities in the Crestwood School District by Monday, January 20, 1975, in conformance with the order of the Wayne County Circuit Court dated January 10, 1975, the stay of which is hereby dissolved.

The exigencies of this situation require us to order, under GCR 1963, 820.1(7) and MCLA 600.310; MSA 27A.310, that within 10 days from the date of this opinion the lower court shall order compulsory arbitration to resolve the remaining issues which separate the parties. The number of the arbitrators, the method of their selection and the time limitations are left to the discretion of the trial court.

Affirmed as modified; remanded for proceedings consistent with this opinion.

No costs, a public question being involved.