CRESTWOOD EDUCATION ASSOCIATION v EMPLOYMENT
RELATIONS COMMISSION

1. APPEAL AND ERROR—ADMINISTRATIVE LAW—PUBLIC EMPLOYMENT
   RELATIONS ACT—FINDINGS OF FACT—STANDARD OF REVIEW—
   STATUTES.

   The standard of review of an administrative board's findings of
   fact under the public employment relations act (PERA) is that
   the findings shall be conclusive if they are supported by compe-
   tent, material and substantial evidence on the record consid-
   ered as a whole (MCLA 423.216[e]; MSA 17.455[16][e]).

2. LABOR RELATIONS—COLLECTIVE BARGAINING—GOOD FAITH BAR-
   GAINING—MICHIGAN EMPLOYMENT RELATIONS COMMISSION.

   The Employment Relations Commission was correct in determin-
   ing that a school board was bargaining in good faith at the
   time a teachers' association went out on strike where at the
   time of the strike all noneconomic issues between the parties
   had been resolved, a majority of the economic issues had been
   settled and the parties were still making progress at the time
   of the strike.

3. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMIS-
   SION—MICHIGAN LABOR MEDIATION ACT—BALANCING COMPET-
   ING EQUITIES.

   The Michigan Employment Relations Commission should balance
   the competing equities to reach a result best effectuating the
   goals of the Michigan labor mediation act where the MERC
   finds that an unfair labor practice or other misconduct was
   committed by both sides.

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 545, 546, 549–552.
[1–6, 10, 11] 48 Am Jur 2d, Labor and Labor Relations §§ 1191–1197.
[7, 9] 63 Am Jur 2d, Public Officers and Employees § 127 *et seq.*
[8] 2 Am Jur 2d, Administrative Law § 196 *et seq.*
[11] 48 Am Jur 2d, Labor and Labor Relations § 246.
   68 Am Jur 2d, Schools § 175.
   Union organization and activities of public employees. 31 ALR2d
   1142.

4. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—SECTION
6 HEARINGS—LIMITED INQUIRY—IDENTIFICATION OF STRIKERS—
ASSERTION OF DEFENSES.

A hearing under § 6 of the public employment relations act is a
limited inquiry to determine whether an employer correctly
identified a particular employee as a violator of the act's
prohibition against striking by public employees and it is not
the appropriate forum for the employee to assert in defense the
employer's violation of the act (MCLA 423.206; MSA 17.455[6]).

5. LABOR RELATIONS—APPEAL AND ERROR—MICHIGAN EMPLOYMENT
RELATIONS COMMISSION—DISMISSAL OF STRIKING EMPLOYERS.

The Court of Appeals need not weigh the gravity of the miscon-
duct of striking public employees against the unfair labor
practices and discriminatory discharges by the employer where
the Michigan Employment Relations Commission has deter-
mined that there was no unfair labor practice on the part of
the employer and that employee misconduct, engaging in an
illegal strike, was the cause of the striking employee's dis-
charge.

6. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMIS-
SION—REINSTATEMENT OF DISCHARGED TEACHERS—PERMISSIVE
LANGUAGE.

A Michigan Employment Relations Commission order for rein-
statement of discharged striking teachers would have to be by a
2-0 vote where a Supreme Court's order remanding for further
hearings was couched in permissive language that the strikers
*may* be reinstated and where there are only two members on
the MERC panel.

7. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMIS-
SION—FILLING OF VACANCY.

The Michigan Employment Relations Commission need not take
immediate action to fill any vacancy on the commission.

8. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMIS-
SION—QUORUM.

Two members of the Michigan Employment Relations Commis-
sion are all that is needed to have full powers as a quorum
(MCLA 423.4; MSA 17.454[4]).

9. LABOR RELATIONS—MICHIGAN EMPLOYMENT RELATIONS COMMIS-
SION—FILLING OF VACANCY—CONSTITUTIONAL LAW.

There is nothing in either § 7 or § 11 of art 5 of the Michigan
constitution indicating that the governor has a duty to name a

substitute to sit on the Michigan Employment Relations Commission when it has a vacancy (Const 1963, art 5, § 7, 11).

10. LABOR RELATIONS—PUBLIC EMPLOYEES—STRIKERS—DISMISSAL OF STRIKERS—EVIDENCE—PUBLIC EMPLOYMENT RELATIONS ACT—STATUTES.

Dismissal of striking public employees is authorized by § 6 of the public employment relations act, subject to the obligation of the employer to show a violation by competent, material and substantial evidence (MCLA 423.206; MSA 17.455[6]).

11. LABOR RELATIONS—TEACHERS—DISMISSAL OF STRIKING TEACHERS—PUBLIC EMPLOYMENT RELATIONS ACT—HEARINGS—RIGHT TO APPEAL—STATUTES.

Teachers who have been dismissed for striking have a statutory right to appeal any decision contrary to their interests after hearings under § 6 of the public employment relations act (MCLA 423.206; MSA 17.455[6]).

Appeal from Michigan Employment Relations Commission. Submitted June 7, 1976, at Detroit. (Docket Nos. 25205, 25715.) Decided September 27, 1976. Leave to appeal applied for.

Charges filed with the Michigan Employment Relations Commission by the Crestwood Education Association against the Crestwood School District Board of Education charging the Board of Education with unfair labor practices and seeking the reinstatement of member teachers who had been fired by the Board of Education. Charges dismissed and reinstatement refused. Crestwood Education Association appeals. Affirmed.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann),* for Crestwood Education Association.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for Michigan Employment Relations Commission.

*Royal G. Targan, P. C.* (by *Edward L. Homeier),* for Crestwood School District Board of Education.

Before: J. H. GILLIS, P. J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. After having been heard by the highest courts of this state and the nation, the Crestwood dispute is once again before us. The facts are adequately reported in *Rockwell v Crestwood School District Board of Education,* 57 Mich App 636; 226 NW2d 596 (1975), *rev'd,* 393 Mich 616; 227 NW2d 736 (1975). Only recently appeal was dismissed, for want of a substantial Federal question, by the United States Supreme Court, *Crestwood Education Association v Crestwood School Dist, Board of Education,* — US —; 96 S Ct 3184; 49 L Ed 2d 1195 (1976).

In *Rockwell, supra,* our Supreme Court reaffirmed that the public employment relations act (PERA), MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.,* is the governing law for public employee labor relations and also held that tenured and nontenured teachers who engaged in concerted strike action in violation of the act could be disciplined without prior hearing. The remand directed by the Supreme Court to the Michigan Employment Relations Commission (MERC) has taken place. The Crestwood Education Association (CEA) appeals from the decisions of the MERC in Case Nos. C-74-C-48 and C-75-A-2. It has been agreed by stipulation that the two cases, involving various aspects of the continuing labor dispute in the Crestwood School District, should be argued and considered together.

Regarding Case C-48, on March 8, 1974, CEA

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

filed unfair labor practice charges against the Crestwood Board of Education, alleging that after the expiration of a labor contract between the parties on September 2, 1973, the school board had unilaterally, without bargaining to impasse, changed the terms and conditions of employment under which the teachers were expected to work, in violation of § 10 of PERA and a prior cease and desist order. See *In the Matter of: Crestwood Education Association and Crestwood School Dist, Board of Education,* 1973 MERC Lab Op 255. A hearing was held before Administrative Law Judge Sperka. His opinion, released June 11, 1975, recommended that all charges against the school board be dismissed pursuant to the MERC's ruling in *In the Matter of: Warren Consolidated Schools and Warren Education Association,* 1975 MERC Lab Op 129. Timely exceptions were filed by the appellant. The MERC by a 2–0 vote dismissed the charges on September 2, 1975.[1]

In Case A-2, the Crestwood Board of Education filed charges against CEA alleging that it was engaged in a work stoppage which constituted a refusal to bargain. This charge was dismissed by the MERC on July 31, 1975. Accordingly, that issue is not before this Court. However, CEA filed further charges of unfair labor practices against the school board in the same cause. A hearing on those charges was held before Judge Sperka. At the conclusion of those hearings, Judge Sperka found that there had been no unfair labor prac-

---

[1] We take note that the Crestwood Education Association retained the law firm of Levin, Levin, Garvett & Dill as its attorneys. By coincidence, Mr. Erwin B. Ellmann, attorney at law, represented the CEA at the hearing on this appeal. MERC commissioner William M. Ellmann did not sit on this case. The record does not disclose his reason for withdrawing from the determination in this cause. However, we assume familial relationship between the parties. If this is so, ethics would dictate that one party or the other withdraw.

tices committed by the school board and refused the teachers' request for reinstatement. On July 31, 1975, the MERC by a 2–0 vote agreed with the administrative law judge that there had been no unfair labor practices committed by the school board. The commissioners sitting on the case were divided as to whether or not reinstatement should be granted to the teachers as a group. *In the Matter of: Crestwood School Dist Board of Education and Crestwood Education Association,* 1975 MERC Lab Op 608.

The standard of review for us is set forth in the statute:

"The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive." MCLA 423.216(e); MSA 17.455(16)(e).

Similar language is used in the Administrative Procedures Act setting forth the standard of appellate review. See MCLA 24.306(1)(d); MSA 3.560(206)(1)(d).

Writing for a unanimous court, Mr. Justice FITZGERALD in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974), said:

"The cross-fire of debate at the Constitutional Convention imports meaning to the 'substantial evidence' standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an

agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review."

As prescribed by Justice FITZGERALD, we have walked the tightrope, reviewing both sides of the record and we conclude, as did the administrative law judge and the commissioners, that there was no unfair labor practice committed by the school board.

The appellant-union, the charging party before the MERC, alleged unfair labor practices in nine specific areas in its objections to Administrative Law Judge Sperka's opinion: (1) The school board engaged in surface bargaining. (2) The school board refused to furnish requested information to which the charging party was entitled. (3) The school board refused to recognize CEA as the collective bargaining agent for the teachers in the bargaining unit. (4) The school board imposed discipline on officers and bargaining committee members of the charging party because of their participation in work stoppages, action which constituted discrimination. (5) The contract between the school board and the Michigan Association of School Boards whereby the school board designated the Michigan Association of School Boards to handle negotiations with CEA in behalf of the school board was not entered into pursuant to law. (6) Harry Bishop, the representative of the Michigan Association of School Boards until replaced by James Greene in August, 1974, sought to, and did, cause the strikes by the teachers. (7) James Greene

did not fulfill a commitment to endeavor to persuade the school board to expand the "perimeters" of his authority. (8) The members of the school board absented themselves from a meeting with a representative of the Governor. (9) The school board's financial officer completed the estimate of costs of the mediator's proposal in a manner calculated to "shoot down" the proposal. The administrative law judge and MERC opinions in this case deal thoughtfully and completely with the charges made. Our review of the testimony adduced at lengthy hearings has led us to the same conclusions.

We find, as did the MERC, that the parties had made considerable progress by the end of December, 1973. All noneconomic issues had been resolved, and a majority of the economic issues had been settled. While the negotiations were slow, fraught with the bitterness of lengthy labor negotiations, the parties were making progress at the time of the strike. We believe that this is the test of good faith bargaining. PERA demands nothing more, nothing less. PERA, § 15; *Detroit Police Officers Association v Detroit,* 391 Mich 44, 54; 214 NW2d 803 (1974). See also § 8(d) NLRA; 61 Stat 142; 29 USC 158(d).

We also find that this was an economic strike. The testimony of CEA's president, Mr. Stephan Klimczak, indicated that the union struck to "change the rate of compensation, together with the conditions of employment".

"*Q. [By Mr. Homeier]:* Do you realize that—did you realize that in September as well?

"*A. [By Mr. Klimczak, CEA President 1974–75]:* Yes.

"*Q.* In September were you not striking to change the rate of compensation, together with the conditions of employment?

"*A.* Yes.

"*Q.* Now, on December 4th were you not—did you not strike?

"*A.* Yes.

"*Q.* For the same reason?

"*A.* Yes.

"*Q.* To change the conditions of employment and the rate of compensation?

"*A.* Yes.

"*Q.* You knew that was illegal at that time?

"*A.* Yes.

"*Q.* You knew there was an outstanding Circuit Court injunctive order prohibiting you from doing that?

"*A.* Yes.

"*Q.* And, you did it anyway?

"*A.* Yes."

PERA was intended to prohibit strikes by public employees. Its provisions for mediation of grievances and protection of the rights and privileges of public employees are ameliorative additions to the former Hutchinson act (1947 PA 336, as amended by 1965 PA 379, 397 and 1973 PA 25). The present statute reads in pertinent part:

"Sec. 1. As used in this act: (a) 'Strike' means the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment, for the purpose of inducing, influencing, or coercing a change in the conditions, or compensation, or the rights, privileges, or obligations of employment. This act shall not be construed to limit, impair, or affect the right of a public employee to the expression or communication of a view, grievance, complaint, or opinion on any matter related to the conditions or compensation of public employment or their betterment, so long as the same is not designed to and does not interfere with the

full, faithful, and proper performance of the duties of employment." MCLA 423.201; MSA 17.455(1).

"Sec. 2. No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike." MCLA 423.202; MSA 17.455(2).

The Supreme Court in *Rockwell, supra,* mandated the MERC to examine thoroughly the labor dispute before it. That has been done, and findings of fact and conclusions of law have been rendered by the MERC. As noted, we have found no reason to change the decision of the MERC. There remains, however, the issue of the discharged striking teachers. The Supreme Court said:

"If MERC should determine that the employing school district committed an unfair labor practice, MERC *may,* despite the illegality of the teachers' strike, order reinstatement.

"The distinction between administrative agencies and equity courts in the application of the 'clean hands' doctrine was early recognized by the NLRB and the Federal courts in implementing the Congressional mandate that upon the finding of an unfair labor practice the board 'take such affirmative action including reinstatement of employees with or without pay, as will effectuate the policies of the [NLRA]. 'Equally untenable is the contention that the strikers are not entitled to reinstatement because they have not come into court with clean hands. This principle is not applicable to a proceeding in which a governmental agency is seeking enforcement of its order in the public interest.' *Republic Steel Corp v NLRB,* 107 F2d 472, 479 (CA 3, 1939) *modified on other grounds,* 311 US 7; 61 S Ct 77, 85 L Ed 6 (1940).

"The language of the Michigan labor mediation act spelling out the remedial authority of the MERC upon finding an unfair labor practice is identical to the corresponding language of the NLRA.

"If the MERC finds that an unfair labor practice or other misconduct was committed by both sides, it should balance the competing equities to reach a result best effectuating the goals of the act."

\* \* \*

"In this case, teachers sought review under § 6. Because of the pendency of this litigation, § 6 hearings have not been conducted. The hearings may now proceed or, if the parties agree, be deferred until determination by MERC of the unfair labor practice charges.

"A § 6 hearing is of limited inquiry. Its sole purpose is to determine whether the employer correctly identified the particular employee as a violator of the act's prohibition against striking. Since the hearing will ordinarily be conducted by the employer, as the officer or body having general disciplinary authority, a § 6 hearing is not an appropriate forum for the employee to assert in defense the employer's violation of the act. Allegations of or defenses premised upon employer misconduct are the exclusive province of the MERC to resolve upon the filing of an unfair labor practice charge.

"Even if it should be determined in § 6 hearings that particular teachers have violated the provisions of the PERA by striking and those determinations are sustained on review, if MERC orders reinstatement of striking teachers because it determines that this affirmative action will best 'effectuate the policies of the act' and that determination is sustained on review, the teachers shall be reinstated." 393 Mich, at 639–641.

We recognize that the § 6 hearing under PERA is a limited inquiry. Many of the § 6 hearings have been held, some of the teachers involved have been reinstated. The determination by the MERC that there was no unfair labor practice on the part of the board determines that employee misconduct—

*i.e.,* illegal strike—was the cause of the striker's being discharged. Therefore, we need not weigh the gravity of the misconduct in the light of an employer's unfair labor practices and discriminatory discharges. *National Labor Relations Board v Thayer Co,* 213 F2d 748 (CA 1, 1954), *cert den,* 348 US 883; 75 S Ct 123; 99 L Ed 694 (1954), *Seminole Asphalt Refining, Inc v National Labor Relations Board,* 497 F2d 247 (CA 5, 1974).

While the MERC was decisive in its finding that there had been no unfair labor practices on the part of the board, the two commissioners sitting on this case were at odds as to the reinstatement of the striking teachers.

"Chairman Howlett would direct the Crestwood School District Board of Education to return the 184 striking teachers to work. In Chairman Howlett's opinion, the Commission is warranted in issuing such an order because to return the teachers to work will best 'effectuate the policies of the act.' The above quotation from *Rockwell v Crestwood School District,* 393 Mich 616, 641, vests the Commission with this power.

\* \* \*

"Commissioner Milmet is of the opinion that the teachers should not be returned to work. The teachers are responsible for their representatives and the actions of those representatives. Commissioner Milmet feels, as noted below, that this matter could and should have been resolved without the drastic disruption of this school system and possible permanent effect on the community. The teachers chose to use an illegal means in an effort to secure their demands. Having selected an illegal procedure, they must bear the consequences of their actions, as provided by law.

"Commissioner Milmet is further of the opinion that the Commission does not have power to return the teachers to work. The Supreme Court decreed that if the Crestwood School District representatives committed an unfair labor practice, the Commission *may* order

reinstatement. The paragraph on page 641 of the Court's opinion in *Rockwell v Crestwood School District, supra,* must, in the opinion of Commissioner Milmet be read in context with the paragraph on page 639. This limits the Commission's power to reinstate teachers only if the School District's representatives did not engage in an unfair labor practice, the Commission does not, in Commissioner Milmet's view, have power to direct reinstatement. There was not *[sic]*unfair labor practice to remedy.

\* \* \*

"As the Chairman and Commissioner Milmet are divided on the issue as to the exercise of the Commission's discretion as to ordering the reinstatement of the teachers, the Commission adopts the recommended Order of the Administrative Law Judge." *In the Matter of: Crestwood School Dist, Board of Education and Crestwood Education Association,* 1975 MERC Lab Op 608, 622–623, 626.

MERC found by a 2–0 vote that the school board had not engaged in unfair labor practices. Because the Michigan Supreme Court's remand order was couched in the permissive language" *may,* despite the illegality of the teachers' strike, order reinstatement", a MERC order of reinstatement, to be effective, would have to have been by a similar 2–0 vote. Having disagreed, the two-man panel hearing this case failed to order these strikers reinstated. MCLA 423.4; MSA 17.454(4).

The appellant urges a duty to provide a panel of three commissioners in all hearings before the MERC, citing constitutional and statutory authority which, it is claimed, mandates the Governor to insure that all cases are heard by three members. Appellant urges that § 79 of the Administrative Procedures Act, MCLA 24.279; MSA 3.560(179), requires that the MERC take immediate steps to fill any vacancy on the commission, for whatever

reason.[2] The statute cited mandates *no* such action, indeed the legislative instruction is that two members of MERC have full powers as a quorum. MCLA 423.4; MSA 17.454(4).

Alternatively, the appellant urges that the Governor should have been asked to name a substitute immediately. We find nothing in the Michigan Constitution of 1963, art 5, §§ 7 or 11 indicating that the Governor has such a duty.

Section 6 of PERA, MCLA 423.206; MSA 17.455(6), authorizes dismissal of striking public employees, subject to the obligation of the employer to show a violation by competent, material and substantial evidence. *Lake Michigan College Federation of Teachers v Lake Michigan Community College,* 390 F Supp 103 (WD Mich, 1974). The dismissed teachers have, by statute, the right to appeal any decision contrary to their interests after § 6 hearings. In light of the language of the Supreme Court in *Rockwell, supra,* we are not persuaded to change the MERC decision and order.

Affirmed.

---

[2] "Sec. 79. An agency, 1 or more members of the agency, a person designated by statute or 1 or more hearing officers designated and authorized by the agency to handle contested cases, shall be presiding officers in contested cases. Hearings shall be conducted in an impartial manner. On the filing in good faith by a party of a timely and sufficient affidavit of personal bias or disqualification of a presiding officer, the agency shall determine the matter as a part of the record in the case, and its determination shall be subject to judicial review at the conclusion of the proceeding. When a presiding officer is disqualified or it is impracticable for him to continue the hearing, another presiding officer may be assigned to continue with the case unless it is shown that substantial prejudice to the party will result therefrom."