ARNOLD v CRESTWOOD BOARD OF EDUCATION

Docket Nos. 77-3520–77-3531, 77-3793–77-3919. Submitted August 3,
1978, at Detroit.—Decided December 28, 1978. Leave to appeal
applied for.

Teachers in the Crestwood school district engaged in a strike, and
the Crestwood Board of Education discharged those teachers
who failed to report for work pursuant to the terms of a
resolution of the board. The teachers sought immediate injunc-
tive relief in the Wayne Circuit Court. A three-judge panel of
that court declared the discharges invalid, and that decision
was upheld by the Court of Appeals in *Rockwell v Crestwood
School District Bd of Ed,* 57 Mich App 636 (1975). The board
appealed and the Supreme Court reversed, 393 Mich 616 (1975),

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law §§ 250, 542.
   68 Am Jur 2d, Schools § 50.
[2] 16 Am Jur 2d, Constitutional Law §§ 411, 412.
   68 Am Jur 2d, Schools §§ 161, 175.
   Union organization and activities of public employees. 31 ALR2d
   1142.
   What constitutes bill of attainder under Federal Constitution—
   Federal cases. 4 L Ed 2d 2155.
[3] 2 Am Jur 2d, Administrative Law §§ 764-766.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1191.
   68 Am Jur 2d, Schools §§ 128, 149-151.
[5] 58 Am Jur 2d, Notice §§ 22, 23.
[6] 16 Am Jur 2d, Constitutional Law § 562.
[7] 2 Am Jur 2d, Administrative Law §§ 414, 419.
   68 Am Jur 2d, Schools §§ 189, 192.
[8] 68 Am Jur 2d, Schools § 188.
[9] 16 Am Jur 2d, Constitutional Law § 569.
   68 Am Jur 2d, Schools §§ 189, 192.
[10] 16 Am Jur 2d, Constitutional Law § 573.
   68 Am Jur 2d, Schools § 192.
[11] 1 Am Jur 2d, Administrative Law §§ 63-65.
[12] 30 Am Jur 2d, Evidence §§ 1036, 1037.
[13, 14] 68 Am Jur 2d, Schools § 46.
[15] 68 Am Jur 2d, Schools §§ 200, 203, 205.
[16] 2 Am Jur 2d, Administrative Law §§ 545-549.
   68 Am Jur 2d, Schools § 202.

and remanded the matter for hearings under the public employment relations act, limited to a determination of whether the school board correctly identified each individual teacher as a violater of the statutory prohibition against striking. The hearings were held and the board found that it had correctly identified most of the discharged teachers as participants in the strike and upheld their discharge. The teachers appealed to circuit court, Joseph G. Rashid, J., which remanded to the board for further hearings because of several alleged procedural defects. The hearings on remand were held and the board affirmed its decision in each of 139 instances. The teachers again appealed to circuit court, which affirmed the discharge of 127 teachers, but reversed as to 12 teachers and ordered those 12 reinstated. The board of education appeals as to the order of reinstatement of the 12 teachers, and the 127 teachers who were not reinstated also appeal. Several errors are alleged. *Held:*

1. The school board's disciplinary actions were not illegal. Reasonable restrictions on the right to be employed in governmental service or to continue therein do not constitute unconstitutional bills of attainder.

2. The circuit court's action in remanding for further hearings in order to remedy the mistakes in procedure was not a violation of the teachers' rights to due process. The policy underlying the public employment relations act requires that the circuit court be vested with the power to remand in order to supplement the record, and in this case the circuit court's holding was not clearly erroneous, an abuse of discretion, nor a violation of due process.

3. A resolution of the school board stating that the striking teachers were to report for work on a certain date or face discharge adequately informed the teachers of the board's intentions and of the options open to the teachers.

4. Service of the board's resolution on the teachers was adequate under the circumstances of this case, which indicate a high probability that the individual teachers were aware of the actions of the board. The board's efforts to notify all the teachers were reasonable under all the circumstances and did not constitute a violation of due process.

5. The failure of the board to adopt, on the record, rules of procedure for the hearings on remand does not require reversal in this case because the board substantially complied with the Supreme Court's directive that the proceedings be consonant with the tenor of the teachers tenure act, and the teachers

were not prejudiced by the failure to place specific rules of procedure on the record.

6. The notice of charges contained in the board's resolution regarding the intended discharges, and in a later resolution in which those teachers who did not report for work pursuant to the first resolution were actually discharged, satisfied the statutory requirement that a teacher who is to be discharged must receive a written notice of the charges against him.

7. Adoption by the board at the conclusion of each hearing of a routine resolution denying each petition for reinstatement was a sufficiently individualized finding of fact.

8. The burden of proof at the hearings was not impermissibly shifted to the teachers.

9. The board did not violate due process by acting in both an investigative and in an adjudicatory role; there is insufficient evidence of prejudice on the part of the board to support a claimed violation of due process.

10. Participation of counsel both to present the board's case and to advise the board does not violate due process in the absence of evidence of prejudice or bias.

11. The teachers' claim of bias on the part of the school board is not supported by sufficient evidence to require reversal.

12. Claimed irregularities in the notice to board members of a special meeting of the board are insufficient in the circumstances of this case to require reversal.

13. Under the circumstances of this case, the board's substantial compliance with the statutory provision for public notice of the special meeting of the board was sufficient.

14. The findings of the circuit court regarding the dispositions of the 139 teachers' petitions were proper in each case.

Affirmed.

1. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—CONSTITUTIONAL LAW—STATE ACTION—DUE PROCESS.

Actions of a local board of education constitute state action within the meaning of the due process clauses of the state and Federal constitutions (US Const, Am XIV; Const 1963, art 1, § 17).

2. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—GOVERNMENTAL EMPLOYMENT—RESTRICTIONS—BILLS OF ATTAINDER.

Reasonable restrictions or limitations on the right to be employed in governmental service or to continue therein are not in the nature of bills of attainder; a school board's resolution requiring illegally striking teachers to return to work on a set date or

lose their jobs and a later resolution discharging those who did not report for work on the date set were not illegal bills of attainder (US Const, art 1, § 9[3]).

3. COURTS—CIRCUIT COURTS—ADMINISTRATIVE LAW—REMAND—SUPPLEMENTATION OF RECORD.

A circuit court has the power to remand a case to an administrative agency in order to supplement the record of administrative proceedings when necessary, and a circuit court properly remanded a case to a school board to correct errors in hearings conducted regarding the discharge of teachers who had engaged in a strike.

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISCHARGE OF TEACHER—PUBLIC EMPLOYMENT RELATIONS ACT—TEACHER TENURE ACT.

The provisions of the public employment relations act regarding proceedings for the removal of an employee prevail over any conflicting provisions of the teacher tenure act in the case of a teacher being discharged by a school board (MCL 38.71 *et seq.,* 423.206; MSA 15.1971 *et seq.,* 17.455[6]).

5. NOTICE—INTENT OF WRITING—CONSTRUCTION.

Any writing which is intended to be relied upon to constitute notice to another party is to be construed against the party who prepared the writing.

6. NOTICE—REQUIREMENTS FOR NOTICE—DUE PROCESS—SCHOOLS AND SCHOOL DISTRICTS—STRIKING TEACHERS.

Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to respond, and, if with due regard for the circumstances of the case these conditions are reasonably met, the constitutional requirements of due process are met; a school board's attempts to serve notice on striking teachers of the board's intention to dismiss those teachers who did not report for work on a given date where the circumstances of the case, taken together, indicate a very high probability that the individual teachers were aware of the school board's actions were sufficiently adequate under the circumstances to give notice and no denial of due process resulted.

7. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—DISCHARGE OF TEACHERS—POST-TERMINATION HEARINGS—PROCEDURE.

Failure of a school board to specify and follow a certain set of rules, as set forth in the Administrative Procedures Act, in a

series of post-termination hearings for teachers who had been dismissed as the result of a strike does not require reversal of the board's findings where the school board substantially complied with a Supreme Court directive regarding the proceedings, where the teachers were not prejudiced by any failure to place specific rules of procedure on the record, and where it appears that all parties to the hearing thoroughly understood the basic procedures which were followed.

8. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—DISCIPLINARY ACTION —NOTICE OF CHARGES—STATUTES.

A teacher, under the Administrative Procedures Act and the Teachers Tenure Act, is required to receive signed notice of all charges against him (MCL 24.201 *et seq.,* 38.102; MSA 3.560[101] *et seq.,* 15.2002).

9. CONSTITUTIONAL LAW—DUE PROCESS—IMPARTIAL DECISIONMAKER— SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—DISCHARGE OF TEACHERS.

A hearing before an unbiased and impartial decisionmaker is a basic requirement of due process; however, the combination of investigative and adjudicative roles in a single agency may be proper; a school board's participation in individual hearings of teachers who had been dismissed because of their alleged participation in a strike did not violate the teachers' rights to due process where there was insufficient evidence of prejudice on the part of the school board to support a claim of denial of due process.

10. CONSTITUTIONAL LAW—DUE PROCESS—SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARDS—HEARINGS—PARTICIPATION OF COUNSEL.

Participation of counsel in a dual role of presenting the case of a school board in hearings regarding dismissal of teachers who had been involved in a strike and of acting as advisor to the board did not constitute a violation of due process where no evidence of prejudice or bias clearly appears in the record.

11. ADMINISTRATIVE LAW—DECISIONMAKER—POLICY POSITION—DISQUALIFICATION.

An administrative decisionmaker, such as a school board member, is not disqualified from rendering a decision in a matter simply because he has taken a position, even in public, on a policy issue related to the dispute in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances.

12. EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.

Parol evidence is admissible to prove a mistake relative to a written instrument, to show error in legislative journals, or to show error in the records of local legislative bodies.

13. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARD—SPECIAL MEETING—WRITTEN NOTICE—APPEAL AND ERROR.

A special meeting of a school board was not improperly convened because of a lack of written notice of the meeting to the individual board members where each member was in fact notified of the meeting, the members waived notice of the meeting even though there is no statutory provision for waiver of notice, and no allegations of prejudice resulting from the form of notice are raised.

14. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL BOARD—SPECIAL MEETING—PUBLIC NOTICE—STATUTES.

Public notice of a special meeting of a school board was adequate, despite the notice's failure to indicate that the meeting to be held was a school board meeting or where the meeting was to be held, where all interested parties were aware of the meeting, the general public was fully aware of the meeting and of a dispute between the board and teachers, and the board substantially complied with the statute regarding public notice (MCL 15.253; MSA 4.1800[3]).

15. APPEAL AND ERROR—REVIEW OF SCHOOL BOARD ACTION—STANDARD OF REVIEW.

The standard by which the propriety of findings of a school board are to be reviewed is whether, upon review of the entire record, there is competent, material and substantial evidence to support the findings of the board.

16. APPEAL AND ERROR—ADMINISTRATIVE LAW—FINDINGS OF FACT—SUPPORT IN RECORD.

The Court of Appeals is to give due regard to the fact-finder's opportunity to assess the credibility of witnesses appearing before the fact-finder and to weigh the evidence which it has heard, and the Court of Appeals will not substitute its judgment on the facts for that of the fact-finding tribunal; however, in a matter such as a school board's dismissal of a number of teachers for participation in a strike, the Court must pay close scrutiny to the board's findings to assure that they are supported by the record.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ell-*

*mann, Marshall W. Anstandig,* and *Eli Grier),* for plaintiffs.

*Targan & Homeier,* for defendant.

Before: J. H. GILLIS, P.J., and D. E. HOLBROOK and R. M. MAHER, JJ.

D. E. HOLBROOK, J. The instant case is another in the long line of decisions arising out of the labor dispute between the teachers belonging to the Crestwood Education Association (hereinafter CEA) and the Crestwood Board of Education. The parties' collective bargaining agreement expired in August of 1973 and although negotiations continued throughout the 1973-1974 school year, no contract had been signed as of September 3, 1974, the day upon which the new school year was to have begun.

The Crestwood teachers began a strike on September 3, which continued through October 8, when Crestwood taxpayers, suing as homeowners and parents of district school children as well, sought and obtained from Wayne County Circuit Court Judge Joseph G. Rashid an injunction ordering the teachers to return to their employment positions. A copy of this order, dated October 8, 1974, and a copy of Judge Rashid's continuing injunction issued October 22, 1974, *were each served personally upon all Crestwood school teachers.* Judge Rashid's orders also contained provisions intended to expedite the negotiating process. These orders were apparently respected by all parties until the teachers once again went on strike on December 4, following the Thanksgiving recess. The teachers were absent throughout the month of December.

In early December, Judge Rashid issued orders

to show cause why contempt citations should not be filed against the striking teachers, and on December 13 the teachers were found to be in contempt and fined. When the strike continued through December 20, 1974, the final school day of the fall semester as set forth in the official school calendar, the school board called a special meeting for that evening.

At the December 20 meeting, the school board adopted a resolution which concluded, in pertinent part, as follows:

"Now, THEREFORE, BE IT RESOLVED, that all teaching staff employees of Crestwood School District shall exercise the following options relative to their employment status in the District:

"1. Report to their regular teaching assignments on Friday, December 27, 1974 at the beginning of the regularly scheduled school day;

"2. Submit a letter of resignation to the Crestwood School District by Friday, December 27, 1974 by 4:30 p.m. in the afternoon.

BE IT FURTHER RESOLVED that should any of the Crestwood School District teaching staff fail to act in accordance with the above terms and conditions that effective ، 11:59 p.m. Friday, December 27, 1974 said persons' employment shall be terminated."

The requirements contained in this resolution received wide media coverage and other personal contact to the officers of the CEA and, in addition, a copy of the resolution was sent by certified mail to the last known address of each of the teachers; although a signed receipt was required, it was not necessary that such receipt be signed by the addressee. School board members personally contacted picketing teachers and union officers in an effort to secure the teachers' attendance.

The school board noted the *impending loss in*

*state-aid funds, as a result of more than 50 school days lost,* in adopting the December 20 resolution. The board apparently felt that unless the strike was ended immediately, Crestwood would be unable to meet its quota for days of class attendance prior to the summer deadline. The 27th would be a watershed in the relationship between teachers and the school board: on that day, all teachers who cared to would be allowed to "purge" themselves of any previous misconduct.

Approximately 70 of the notices utilized to inform teachers of the December 20 resolution were eventually returned to the board, unopened, either because delivery was refused, or because the notice remained unclaimed by the addressee. In 26 instances the notice was delivered to, and signed by, one other than the addressee; in six other cases delivery was to the addressee personally, but after the December 27 deadline. The remaining notices were duly received.

On December 27, 1974, of the more than 200 teachers employed in the Crestwood district, only 38 reported for work. At a special meeting called three days later, the school board took formal action to discharge the 184 teachers who had not reported for work on the 27th in a resolution implementing the board's interpretation of the public employees relations act (hereinafter PERA).

As set out in the December 30 resolution, the board proclaimed in pertinent part that:

"WHEREAS, the Board of Education of the Crestwood School District passed a Resolution on December 20, 1974 offering the teaching staff of the Crestwood School District the option of:

"1) Reporting to their regular teaching assignments on Friday, December 27, 1974 * * * or;

"2) Submitting a letter of resignation * * * and

* * *

"[S]aid Resolution * * * further stated that should any of the * * * teaching staff fail to act in accordance with the above * * * said persons' employment shall be terminated; and

* * *

"WHEREAS, * * * probationary teachers in the District * * * have failed and refused to report for duty to their regular teaching assignments and have participated in an illegal strike against the Crestwood School District * * * and

"WHEREAS, * * * non-probationary teachers * * * have failed and refused to report for duty to their regular teaching assignments *and* have participated in an illegal strike against the Crestwood School District * * * and

"WHEREAS, the above named public employees are forbidden from participating in a strike

* * *

"Now, THEREFORE, BE IT RESOLVED, that the above named teaching employees shall be deemed to have and *are terminated from their employment status in the Crestwood School District effective December 27, 1974, at 11:59 P.M. [sic]."* (Emphasis added.)

Prior to adopting this resolution of December 30, the school board did not attempt to establish which of the 184 absent teachers had received actual notice of the board's December 20 resolution. On January 6, 1975, counsel for the teachers responded to the December 30 resolution with a demand for individual hearings before the board as provided for in § 6 of PERA, MCL 423.206; MSA 17.455(6). Simultaneously, unfair labor practice charges were filed against the board before the Michigan Employment Relations Commission. The teachers also sought immediate injunctive relief from the circuit court, alleging that the December 30 firings were ineffective as they did not comply

with the teachers' tenure act (hereinafter TTA), MCL 38.71 *et seq.;* MSA 15.1971 *et seq.*

On January 10, 1975, the school board's action in discharging these teachers was declared invalid by a three-judge panel of the Wayne County Circuit Court: Judge Bowles and Judge Roumell concurred in the majority opinion, Judge Rashid dissented. The Court of Appeals granted emergency leave to appeal on January 12, heard oral argument on January 17, and the same day issued its unanimous opinion affirming the 2-1 circuit court decision. *Rockwell v Crestwood Sch Dist Bd of Ed,* 57 Mich App 636; 226 NW2d 596 (1975). The board of education sought emergency relief and the Court of Appeals was reversed by the Supreme Court in a 4-3 decision. 393 Mich 616; 227 NW2d 736 (1975).

In an opinion written by Mr. Justice LEVIN, the majority assumed *arguendo* that all teachers had fundamental interests in their livelihood and in their profession, which interests were protected by the due process provisions of Federal and state Constitutions.[1] The majority found, however, that a PERA § 6 *post-termination* hearing adequately fulfilled the constitutional obligation. The Supreme Court also vacated the Court of Appeals' decision requiring binding arbitration and remanded the entire matter for hearings under § 6 of PERA. In an effort to guide the board in the conduct of these hearings, the Court stated at 640–641:

"A § 6 hearing is of limited inquiry. *Its sole purpose*

---

[1] *Rockwell v Crestwood Sch Dist Bd of Ed,* 393 Mich 616, 633; 227 NW2d 736 (1975). The Court's opinion at 631 drew no distinction between tenured and non-tenured teachers:

"All teachers do not have rights of continuing tenure. Yet both tenured and non-tenured teachers are in a single public employee bargaining unit and have the same rights and obligations under Michigan's labor relations statutes." (Footnote omitted.)

*is to determine whether the employer correctly identified the particular employee as a violator of the act's prohibition against striking. Since the hearing will ordinarily be conducted by the employer,* as the officer or body having general disciplinary authority, a § 6 hearing is not an appropriate forum for the employee to assert in defense the employer's violation of the act. Allegations of or defenses premised upon employer misconduct are the exclusive province of the MERC to resolve upon the filing of an unfair labor practice charge." (Emphasis added.)

The Court held that post-termination hearings conducted under the guidance of § 6 would satisfy the due process requirements elucidated in *Armstrong v Manzo,* 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965), and *Arnett v Kennedy,* 416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974). It noted the disavowal of any rigid doctrine of due process in *Cafeteria & Restaurant Workers Union v McElroy,* 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961): "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."

Mr. Justice Levin, speaking for the majority, went on to say at 635:

"The possibility of removal of a non-striker is minimized when, as here, the school board *gives each striking teacher personal notice of the opportunity to return to the classroom before disciplinary action is taken.* While on strike, a teacher receives no compensation; striking teachers do not suffer additional interim financial deprivation when disciplined." (Emphasis added.)

Rehearing before the Michigan Supreme Court was denied, 394 Mich 944 (1975).

Administrative Law Judge Shlomo Sperka of the MERC absolved the board of any illegal conduct in the firings and recommended an order confirming

the teachers' discharge. His order was adopted by the MERC and affirmed by the Court of Appeals in *Crestwood Ed Assn v Employment Relations Commission,* 71 Mich App 347; 248 NW2d 266 (1976), *lv den* 399 Mich 853 (1977).

PERA hearings before the Crestwood Board of Education commenced in August of 1975. Counsel for the teachers expressed concern over the board's ability to proceed as an impartial tribunal, claiming bias on the part of two of the current board members. Counsel for the teachers objected generally to the board's alleged incapacity to sit in judgment upon its own actions. The board rejected efforts by the teachers' counsel to conduct a voir dire of the individual board members in an effort to document their incapacity to render an objective decision.

Throughout the hearings, the board's counsel called witnesses, conducted direct examination, cross-examined witnesses called by the teachers, and interposed objections to evidence proferred by the teachers' counsel. They also advised the board, both publicly and privately, with respect to rulings on evidence, hearing procedures, and the board's duties generally.

Under the Supreme Court's decision in *Rockwell,* the only question at issue in these proceedings was the identity of striking teachers. The board found that it had correctly identified 139 teachers as participants in the illegal strike, and affirmed their discharge. Findings of fact as to individual teachers were not adopted. Pursuant to § 6 of PERA, the teachers appealed this decision to the circuit court. Judge Rashid supplemented the record from below with the testimony of the superintendent of schools and the superintendent's secretary. On the basis of that testimony he ruled

that the school board gave adequate notice of the December 30 meeting. Judge Rashid found no authority for granting the teachers' demands for voir dire of the board. He also found insufficient evidence of bias to merit relief.

The circuit court agreed with the teachers, however, with respect to several alleged procedural defects. It held that although PERA obviated the necessity for a hearing prior to termination, the post-termination hearing must be conducted according to the provisions of the TTA. It held that the board erred, therefore, in refusing to exercise its subpoena power, and in failing to provide the teachers with transcripts. For these reasons, the matter was remanded for further hearings.[2] Judge Rashid also held that the December 20 resolution provided adequate notice of the board's charges against the teachers and that the written decisions of the board were sufficient to apprise the teachers of its findings of fact. Nevertheless, the court recommended that upon remand the board briefly express specific factual findings with respect to individual dispositions. The court further noted that the burden of establishing involvement in the strike was on the charging party, the board, which must prove that a strike existed; the board was also required to show that the strike was in violation of PERA; and that the individual teacher participated in such illegal strike.[3] Under the cir-

---

[2] Before the remanded hearings had begun, the teachers brought a petition for rehearing before the circuit court. In an opinion and order dated October 19, 1976, that court emphasized its finding that PERA granted the circuit court power to remand these hearings in order to cure procedural defects. The court stressed that the defects in the first set of hearings were the result of innocent confusion; it deemed the original record of the hearings, as it existed, inadequate for review. Leave from this Court to appeal the circuit court's decision to remand was denied by order dated March 24, 1977.

[3] "Strike" is defined in PERA, at MCL 423.201; MSA 17.455(1) and prohibited at MCL 423.202; MSA 17.455(2).

cumstances of the instant case, the court held that the board could take judicial notice of the existence of an illegal strike.

Counsel for the teachers also petitioned the Supreme Court to set aside its original decision, alleging that counsel for the board had fraudulently deceived that Court as to the extent of notice received by the teachers of the December 20 resolution.[4] This motion was denied, 399 Mich 1045 (1977).

The hearings on remand began in January of 1977 and continued through July. Finally the board passed upon the cases of those teachers who continued to seek reinstatement and affirmed its decision in each of said 139 instances. The teachers appealed once again to the circuit court. Judge Rashid affirmed the discharge of 127 teachers, but reversed as to 12 teachers who, by proof of illness or absence from the jurisdiction, had rebutted the board's prima facie case of wilful nonappearance on December 27. These 12 teachers were ordered reinstated. In reaching his decision, Judge Rashid considered only the teachers' absence on December 27. Judge Rashid held the school board's ultimatum to be an offer of "grace" to teachers attending school on the 27th which due process mandated must be given to all striking teachers.

In the course of his latest opinion, Judge Rashid found the following matters to be established: that the December 20 resolution was sent to the last known address of each teacher by certified mail; that some 200 to 700 persons, including teachers and officers of the teachers' union, attended the December 20 meeting; that the school superintendent contacted picketing teachers, union officials

---

[4] *See* the statement in Mr. Justice LEVIN's opinion at 393 Mich 616, 635.

and representatives of the media, urging the teachers to return to school on December 27; and finally, that media coverage was extensive. The court held that this evidence, taken as a whole, was sufficient to establish a strong inference that each teacher had notice of the resolution and was therefore wilfully absent. The 12 reinstated teachers were held to have rebutted this inference by presenting evidence of lack of notice, or of substantial compliance with absentee reporting procedures. The board of education appeals Judge Rashid's decision in these 12 cases. The 127 teachers who were not reinstated also appeal, alleging several errors in the proceedings below.

The teachers first assert that the action of the school board in terminating their employment was a violation of due process of law under Const 1963, art 1, § 17 and the US Const, Am XIV. It is clear since the decision in *West Virginia State Bd of Ed v Barnette,* 319 US 624, 637; 63 S Ct 1178; 87 L Ed 1628 (1943), that actions of the board of education do constitute state action within the meaning of US Const, Am XIV. Similarly, with respect to the state constitution, see *Whitehead v Bd of Ed of Detroit,* 139 Mich 490, 494; 102 NW 1028 (1905), and *Sayers v Sch Dist No 1, Fractional,* 366 Mich 217; 114 NW2d 191 (1962). It is also clear that the teachers had a "legitimate claim of entitlement to job tenure" under the holding in *Hortonville Joint Sch Dist No 1 v Hortonville Ed Assn,* 426 US 482, 488, n 2; 96 S Ct 2308; 49 L Ed 2d 1 (1976). The teachers claim that the board's action violated due process in that: 1) the actions of the board constituted an illegal bill of attainder proscribed in US Const, art 1, § 9(3), and 2) the procedures adopted to allow the teachers a hearing following discharge were inadequate.

The appellant-teachers' argument that the resolutions passed by the school board constituted an illegal bill of attainder contrary to US Const, art 1, § 9(3) finds no support in constitutional law. Reasonable restrictions or limitations on the right to be employed in governmental service or to continue therein are not in the nature of bills of attainder. See *Gaidamavice v Newaygo Bd of County Rd Commrs,* 341 Mich 280; 67 NW2d 178 (1954), *Detroit v Div 26 of the Amalgamated Assn of Street, Electric Railway & Motor Coach Employees of America,* 332 Mich 237, 252; 51 NW2d 228 (1952), *app dis* 344 US 805; 73 S Ct 37; 97 L Ed 627 (1952), *reh den* 344 US 882; 73 S Ct 164; 97 L Ed 683 (1952). The board's disciplinary actions, clearly intended by and provided for under the PERA, were not legislative action such as that outlawed in *United States v Lovett,* 328 US 303; 66 S Ct 1073; 90 L Ed 1252 (1946).

Next, the teachers argue that the circuit court's action in remanding the PERA § 6 hearings to the school board in order to remedy the mistakes in procedure was in itself a violation of the teachers' rights to due process. Teachers argue first that the board's failure to act within the proper procedural framework required that its decisions be reversed and that the teachers be reinstated.

In *Davis v River Rouge Bd of Ed,* 73 Mich App 358, 362; 251 NW2d 585 (1977), *rem* 402 Mich 819 (1977), the Court of Appeals held that the purpose of the TTA was to protect teachers' rights, and that being remedial, the statute required strict compliance. In *Lawson v Wayne Community Sch Dist,* 63 Mich App 57, 62; 233 NW2d 713 (1975), it was held that the appropriate remedy for failure to proceed under the regulations of the TTA is reinstatement, subject however to mitigation.

In remanding to the school board the circuit court, by way of analogy, cited MCL 423.216(d); MSA 17.455(16)(d), which expressly allows the Court of Appeals to remand unfair labor practice litigation. Similarly, MCL 24.306(2); MSA 3.560(206)(2) provides that proceedings under the Administrative Procedures Act (hereinafter APA), which we believe must carry great weight in cases such as this, may be remanded. We agree with the circuit court that the policy underlying PERA requires that the circuit court be vested with the power to remand in order to supplement the record; the APA recognizes that this power is essential to circuit court appellate review of administrative proceedings. This decision also finds support by analogy in the procedure adopted in § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631 as implemented by GCR 1963, 701, 702 and 706.

When this matter was first before the Michigan Supreme Court, Mr. Justice LEVIN, in discussing the applicable procedure, stated in *Rockwell*, at 628–629:

"Section 6 further provides that the proceeding for the determination whether the public employee violated the provisions of the PERA shall be 'appropriate' to a proceeding for the removal of the employee * * * and thus, in the case of a tenured teacher, *consonant with the tenor of the procedures spelled out in the teachers' tenure act. But to the extent there is conflict * * * the PERA is to govern* [and] '[n]otwithstanding the provisions of any other law'." (Emphasis added.)

Judge Rashid, in his first opinion, instructed the parties as to the applicable procedure by paraphrasing the above as follows:

"Stated succinctly *the procedures to be employed in*

*the § 6 hearings are those set forth in the TTA, except where an inconsistency between that act and the dictates of the PERA evinces itself. In those instances PERA prevails. Here the relevant inconsistencies are the right to pre-termination versus post-termination hearings and the appellate prerogatives.* In other areas where the PERA does not address procedural rules and the TTA does, ergo there is no manifest inconsistency, the latter act, to wit the TTA, obtains." (Emphasis added.)

The TTA in MCL 38.104(e) and (g); MSA 15.2004(e) and (g) clearly provides that the teachers are entitled to transcripts and that the board is required to issue subpoenas to the teachers. The board offered, as an excuse for its failure to follow the required procedure in the original proceedings, its failure to understand the instructions given by the Supreme Court.

After holding that the board had failed to prove a prima facie case by failing to show that the teachers had received notice of the December 20 resolution, Judge Rashid remanded the hearings to the board citing the above defects and also setting forth the burden of proof which the board must meet. In his clarifying opinion of October 19, Judge Rashid reiterated his impression that the procedural defects were not intentional and held:

"It is settled that a court may remand a case for further proceedings in the interests of justice, *Lorland Civic Association v DiMatteo,* 10 Mich App 129 [157 NW2d 1] (1968). Were equity the compelling consideration the present holding would be the same, as it was evident from the transcripts that the parties acted upon mistaken impressions of the applicable law. The remand order of September 14, 1976 was a function of the fact that the record was not complete, and therefore not amenable to proper review. As a result of further hearings, the record will have been made whole, the

interests of the parties will have been preserved. The courts have been traditionally liberal in exercising the power of remand with respect to appeals from administrative agencies for in reviewing administrative action the court need not observe the technical rules which are applied in reviewing actions of regularly constituted trial courts, *Reck v Whittlesberger,* 181 Mich 463 [148 NW 247] (1914)."

See also, 2 Am Jur 2d, Administrative Law, § 527, pp 338–339. While it is true that cases are not to be tried a piece at a time, *Stephenson v Golden,* 279 Mich 710, 733; 276 NW 849 (1937), and that where a party with the burden of proof has failed to sustain that burden, reversal and judgment for the opposing party is usually warranted, *In The Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973), these cases do not require the result which the teachers suggest. Judge Rashid's opinion evidences a sincere consideration of the conflicting policies underlying administrative review: the desire for finality balanced against the need for close scrutiny in order to insure proper decision-making. The judge's holding, guided by the analogous provisions above, was a perfectly sound interpretation of legislative intent, based upon his reading of the PERA; it is not clearly erroneous, nor were his orders an abuse of discretion or a violation of due process.

The teachers object to the adequacy of the resolution utilized as notice to apprise the teachers of their duties with respect to the December 20 resolution: 1) it is alleged that the resolution was not calculated to apprise the teachers of a choice of action, and 2) that it was ambiguous in that the teachers' choices were not properly stated as options. Michigan law requires that any such writing which is intended to be relied upon to constitute

notice to another party must be construed against the preparer of that notice. *Sroka v Catsman Transit-Mix Concrete, Inc,* 350 Mich 672, 676; 86 NW2d 801 (1957), and *Ben T Young Co v Lafayette East Co,* 56 Mich App 54, 57; 223 NW2d 361 (1974). It can hardly be doubted that the notice fully informed its recipients of the school board's intentions. Nothing more than this is required. If received, this resolution clearly would give a person of ordinary intelligence fair notice of the school board's action. *Papachristou v City of Jacksonville,* 405 US 156, 162; 92 S Ct 839; 31 L Ed 2d 110 (1972).

The teachers also allege error with respect to the adequacy of service of the December 20 resolution. Despite the board's contentions to the contrary, the teachers are not foreclosed from challenging the adequacy of notice received by teachers of the December 20 resolution. Counsel for the teachers contend they were unaware of the inadequacy of notice when the case was first argued before the Supreme Court in *Rockwell.* The matter concerning the service of the notice upon the teachers was not placed in issue by the teachers in the *Rockwell* case. The Supreme Court's denial of petitioners' motion to set aside its original decision does not imply a decision on the merits of petitioners' notice claim. See *Allen v Michigan Bell Telephone Co,* 18 Mich App 632; 171 NW2d 689 (1969), *lv den* 383 Mich 804 (1970), 61 Mich App 62, 66; 232 NW2d 302 (1975).

Finally, assuming that § 6 requires that notice be given a teacher prior to taking disciplinary action against him, this does not determine whether or not due process requires that *all* teachers receive notice of an offer of "grace". The December 20 resolution was an offer of "grace", it

was "[t]he Board's attempt to get the strikers into school on the 27th of December [and] was *obviously meant to be a last chance for those teachers to purge themselves* of their past defiance of their obligations as public employees". (Emphasis added.) Appellant Crestwood Board of Education's brief.

One of the most obvious precepts of due process is that all members of any given class must be afforded substantially the same procedure; in this case, given the board's stated intent, it was necessary that the board extend to each teacher the same opportunity to make amends for his or her past illegal conduct.

The trial court held that the board's good faith efforts to notify the teachers of their required attendance on the 27th was adequate notice of the board's intentions, without requiring proof of receipt of notice by each discharged individual. Taking into account the extensive media coverage, the personal contacts of the superintendent, the heavy attendance at the December 20 meeting, the fact that notices of attempted delivery were left at all houses where delivery could not be effected, and the overall circumstances of the labor dispute, the court felt that despite the large number of notices which were not received, the board had established a rebuttable presumption of notice.[5] Teachers, in

[5] The trial court found in its opinion the following:

"In addition to establishing that a copy of the Board's resolution of December 20, 1974 (which in substance established December 27, 1974 as a work day for the District's teachers and directed the teachers to report to work on December 27, 1974, submit a resignation or be discharged) was mailed on December 21, 1974 to each teacher of the District by certified mail, evidence was presented at the remand hearings establishing (1) that the School Board meeting of December 20, 1974 was attended by from 200 to 700 persons including some of the teachers of the District and also including the officers of the union local serving as bargaining agent for the teachers, (2) that superintendent of schools Rutila, in an effort to see that the teachers were notified to

response, look to *Weckerly v Mona Shores Bd of Ed,* 388 Mich 731, 735; 202 NW2d 777 (1972), which held: "the postman's leaving the notice of attempted delivery of the letter enclosing the written notice is not providing the written notice, which was returned to the post office" and to the decision of other state courts which have held that one may not presume that a registered letter which is never claimed was known to be in existence by the addressee. *Cf: Stone v Sinkfield,* 70 Ga App 787; 29 SE2d 310, 311 (1944), *Paxson v Crowson,* 47 Del 114, 117; 87 A2d 881 (1952), *Lendsay v Cotton,* 123 So 2d 745, 747 (Fla App, 1960). We agree with the proposition for which these cases are cited, that is, that receipt of notice of attempted delivery alone would not establish a rebuttable presumption of notice. Nevertheless, we do agree with the finding of the circuit court that, taken together, *the circumstances of this case indicate a very high probability that the individual teachers were aware of the actions of the school board prior to December 27.*[6] Apparent individual exceptions to this rule will be discussed later.

In *Mullane v Central Hanover Bank & Trust Co,*

---

report to work on December 27, 1974, spoke to the TV people, spoke to the newspapers, spoke to some of the people on the picket lines and spoke to the teachers' bargaining agent requesting that the teachers get back to work *(Aboud* Tr 1/5/77, vol II, pp 31–33), (3) that Mr. Skopczynski, then President of the School Board, went on TV and pleaded for the teachers to come back to work *(Aboud* Tr 1/5/77, vol II, p 35), and (4) that among the newspaper articles published between December 20, 1974 and December 27, 1974 was one in the Detroit News of Tuesday, December 24, 1974 which read 'Crestwood deadline near—New talks set in school strike' *[sic]* 'The school board four days ago issued an ultimatum to teachers demanding that they report for work Friday or submit their resignations. Those who do neither, the school board vowed, would be dismissed.' 'School officials, however, said they can and will fire teachers who don't report for work.' And another in the Detroit Free Press of Sunday, December 22, 1974 which read 'Return to work or quit—striking teachers warned.' *(Aboud* exhibits 143, 143A, 148 and 148A)."

[6] *See* fn 5, *supra.*

339 US 306, 314–315; 70 S Ct 652; 94 L Ed 865 (1950), the Supreme Court discussed the doctrine of due process when it stated that:

> "*An elementary and fundamental requirement of due process* in any proceeding which is to be accorded finality *is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to* [respond]. * * * *The notice must be of such nature as reasonably to convey the required information,* * * * and it must afford a reasonable time for those interested to make their appearance * * *. *But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.* 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' * * *
>
> "But when notice is a person's due, process which is a mere gesture is not due process. *The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.*" (Emphasis added.) (Citations omitted.)

We rule that evidence of the above-enumerated actions taken by the school board to insure the teachers' attendance on December 27 indicates that more than "a mere gesture" was made to apprise the teachers of the December 20 resolution; the school board's efforts were "reasonable" under all the circumstances. Similarly, we think the actions of the school board satisfy the "flexible" state due process requirement enunciated in *Dow v State of Michigan*, 396 Mich 192, 207–211; 240 NW2d 450 (1976).

The teachers' next set of alleged errors focus upon procedural matters relevant to the § 6 hearings. As noted above, the Michigan Supreme Court held in *Rockwell*, 393 Mich at 628, that the proce-

dure followed in the hearings conducted by the school board must be "consonant with the tenor of the procedures spelled out in the teachers' tenure act"; in addition, the teachers suggest that the APA, MCL 24.201, *et seq.;* MSA 3.560(101), *et seq.,* should also have been complied with by the school board.

The teachers note that §§ 7, 42, 45 and 46 of the APA, that is, MCL 24.207; MSA 3.560(107), MCL 24.242; MSA 3.560(142), MCL 24.245; MSA 3.560(145), and MCL 24.246; MSA 3.560(146), require the adoption of rules of procedure in advance of commencement of proceedings. Counsel for the teachers objected strenuously when the school board failed to outline, on the record, the governing rules of procedure for the PERA § 6 hearings. While it would have been preferable for the school board to have adopted a specific set of rules of procedure, we find that during the remanded hearings the school board substantially complied with the Supreme Court's directive that the § 6 proceedings be consonant with the tenor of the procedures spelled out in the TTA and that the teachers were not prejudiced by any failure to place specific rules of procedure on the record. On review, it appears that all parties to the § 6 hearings thoroughly understood the basic procedure which was followed and, thus, the purposes of the APA have been served. Failure to specify and follow a certain set of rules as set out in APA does not require reversal in the instant case.

Both the APA and § 2 of the TTA, MCL 38.102; MSA 15.2002, require that the teacher receive signed notice of all charges standing against him. See also, *Biberstine v Port Austin Pub Sch Dist No 9,* 51 Mich App 274; 214 NW2d 729 (1974). We rule as did the circuit court that the notice of charges

contained in the December 20 and December 30 resolutions of the school board satisfied the purpose of this provision. Clearly, § 2 is aimed at eliminating the specter of groundless and unidentified charges. Members of the CEA were all well aware of the school board's complaint. The focus of the instant hearings was not, as would usually be the case, upon determining whether charges against an individual teacher's character were correct or true. Rather, as the Supreme Court held, the only question at issue here was whether or not an individual teacher had participated in the strike. It was established at the hearing that all of the dismissed teachers had been a part of the strike in the months of September and December.

Counsel for the teachers also decry the board's practice of adopting at the conclusion of each hearing a routine resolution whereby each of the subject reinstatement petitions was denied and the December 20 and December 30 resolutions were affirmed. Findings of fact and law were allegedly not sufficiently individualized according to § 4(f) of the TTA, MCL 38.104(f); MSA 15.2004(f).

The teachers, citing numerous decisions of the Michigan and United States Supreme Courts, note that in order for the appellate process to be effective the hearing body must delineate its findings clearly. However, our Supreme Court has ruled:

" 'Courts are indulgent toward administrative action to the extent of affirming an order where the agency's path can be "discerned" even if the opinion "leaves much to be desired." ' " *Viculin v Dept of Civil Service,* 386 Mich 375, 406; 192 NW2d 449 (1971), citing *WAIT Radio v Federal Communications Comm,* 135 US App DC 317, 320; 418 F2d 1153, 1156 (1969).

The teachers further argue that the board improp-

erly placed the burden of proof on individual teachers to absolve themselves of participation in the illegal strike. The teachers note that the Supreme Court in *Rockwell,* 393 Mich at 650, placed the burden upon the board to identify any particular teacher as a violator of PERA. The teachers apparently claim that the board's action in relying upon the prima facie showing of participation in the strike and notice of the resolution placed them in an untenable position where they could no longer exercise their Fifth Amendment privilege against self-incrimination by refusing to testify at the § 6 hearings. As was discussed above, however, the school board did not place the burden of proof upon the teachers. Rather it established under § 6 a prima facie case of involvement in the strike which the teachers, in order to gain reinstatement, were required to rebut. The risk of nonpersuasion remained with the board of education throughout the § 6 hearings. Only the burden of going forward with the evidence devolved upon the teachers after a prima facie case was established by the board.

The teachers also argue that the board's participation in the proceedings, both in an investigative and in an adjudicatory role, was a violation of due process. In *Crampton v Dept of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), the Court held that "[a] hearing before an unbiased and impartial decisionmaker is a basic requirement of due process". The combination of investigative and adjudicative roles in a single agency has been expressly upheld in *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975), and *In the Matter of Del Rio,* 400 Mich 665, 690 *et seq.;* 256 NW2d 727 (1977).

In the instant case, § 6 specifically requires that the individual hearings take place before the school board. Appellant teachers claim, however, that the

Crestwood litigation is "a special case" and that § 6 should not apply, due to the extreme involvement of individual members of the school board. The circuit court failed to find sufficient evidence of prejudice on the part of the school board to support the teachers' claims. We agree with the circuit court.

The teachers also suggest that this Court should adopt a stricter standard than has been adopted by the Federal courts with respect to involvement of counsel for the board both in presenting the board's case and as advisor to the board. The Pennsylvania courts have adopted a very strict approach, such as the teachers recommend. See *English v North East Bd of Ed,* 22 Pa Comm 240; 348 A2d 494 (1975), and *Horn v Twp of Hilltown,* 461 Pa 745; 337 A2d 858 (1975). While this approach is consistent with § 79 of the APA, it is also a much stricter standard than has been required under the Federal Constitution. We prefer to adhere to the Federal rule, admonishing district school boards that only if evidence of prejudice or bias clearly appears on the record will participation of counsel in a dual role constitute a violation of due process.

With respect to the teachers' allegations of bias upon the part of the school board and denial of due process, the teachers cite numerous cases decided by the United States Supreme Court with respect to the need for an impartial decisionmaker. None of these decisions, however, is so closely on point as is *Hortonville Joint Sch Dist No 1 v Hortonville Ed Assn,* 426 US 482, 491-492; 96 S Ct 2308; 49 L Ed 2d 1 (1976). *Hortonville* considered the propriety of a school board holding initial hearings to determine the validity of dismissals made by it, based upon participation in an illegal strike. With respect to bias on the part of the school board, the Supreme Court said at 491-493, 495, 496-497:

"General language about due process in a holding concerning revocation of parole is not a reliable basis for dealing with the School Board's power as an employer to dismiss teachers for cause.

\* \* \*

"Respondents' argument rests in part on doctrines that have no application to this case. They seem to argue that the Board members had some personal or official stake in the decision whether the teachers should be dismissed, comparable to the stake the Court saw in \* \* \* [cases previously decided] and that the Board has manifested some personal bitterness toward the teachers, aroused by teacher criticism of the Board during the strike \* \* \*. Even assuming that those cases state the governing standards when the decisionmaker is a public employer dealing with employees, *the teachers did not show,* and the Wisconsin courts did not find, *that the Board members had the kind of personal or financial stake in the decision that might create a conflict of interest, and there is nothing in the record to support charges of personal animosity.*

\* \* \*

"The only other factor suggested to support the claim of bias is that the School Board was involved in the negotiations that preceded and precipitated the striking teachers' discharge. Participation in those negotiations was a statutory duty of the Board. \* \* \* Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. \* \* \* *Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'*

\* \* \*

"[E]ven if the property interest claimed here is to be compared with the liberty interest at stake in *Morrissey [v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972)], we note that both 'the risk of an erroneous deprivation' and 'the degree of potential deprivation' differ in a qualitative sense and in degree from those in *Morrissey.* \* \* \*

"The governmental interests at stake in this case also differ significantly from the interests at stake in *Morrissey*. The Board's decision whether to dismiss striking teachers involves broad considerations, and does not in the main turn on the Board's view of the 'seriousness' of the teachers' conduct or the factors they urge mitigated their violation of state law. It was not an adjudicative decision, for the Board had an obligation to make a decision based on its own answer to an important question of policy: What choice among the alternative responses to the teachers' strike will best serve the interests of the school system, the interests of the parents and children who depend on the system, and the interests of the citizens whose taxes support it? The Board's decision was only incidentally a disciplinary decision; it had significant governmental and public policy dimensions as well.

\* \* \*

"Respondents have failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process. A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. \* \* \* Accordingly, we hold that the Due Process Clause of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or reviewed by a body other than the School Board." (Emphasis added.) (Citations omitted.)

We do not find sufficient evidence of bias in this case to differentiate it from the decision reached by the United States Supreme Court in *Hortonville*. While the decisions cited by the teachers with respect to previously expressed "opinions on the very merits" and "announced intentions to dismiss", *Cinderella Career & Finishing Schools,*

*Inc v Federal Trade Comm,* 138 US App DC 152; 425 F2d 583, 590–592 (1970), *Staton v Mayes,* 552 F2d 908 (CA 10, 1977), *cert den,* 434 US 907; 98 S Ct 309; 54 L Ed 2d 195 (1977), must carry some weight in our decision, we find the facts of the instant case to be more closely analogous to those in *Hortonville,* especially given the weight assigned by the Supreme Court to the school board's policymaking role.

Finally, the teachers argue that the December 30 special meeting was improperly called as none of the members of the board was served with notice of said meeting and there is no provision under MCL 340.63; MSA 15.3063[7] to waive notice. Such meetings may be held with or without proper notice provided that all members of the board are present, MCL 340.561; MSA 15.3561. Since one of the members of the board was not present at the December 30 meeting, and since the board members did not receive written notice of that meeting, the teachers argue that it was improperly convened and, therefore, that any action taken by the board at that meeting, in this case dismissal of teachers who failed to report on December 27, is illegal and of no effect.

When counsel for the teachers originally requested copies of the notice for the December 30 meeting, they instead received a purported waiver of notice containing signatures of board members no longer on the board in December of 1974. The board explained this discrepancy by its claim that the waiver of notice from an earlier meeting had accidently been attached to the December 30 agenda. The proper notice was eventually found, produced and attached to the December 30

---

[7] Since replaced by MCL 380.115; MSA 15.4115, effective January 1977.

agenda.[8] The teachers argue that such substitution amounts to an illegal modification of official records.

While one of the cases cited by appellants, *Tavener v Elk Rapids Rural Agricultural Sch Dist,* 341 Mich 244, 251–252; 67 NW2d 136 (1954), does hold that official records may not be altered by parol evidence, this is not the issue in the present case. The originally produced waiver of notice was incorrect on its face. If anything, the problem faced by the school board was one of authentication, not of parol evidence. At any rate, parol evidence is admissible to prove a *mistake* relative to a written instrument, *Bush v Merriman,* 87 Mich 260; 49 NW 567 (1891), or to show error in legislative journals, *State ex rel Morris v Secretary of State,* 43 La Ann 590; 9 So 776 (1891). It is also admissible to show error in the records of local legislative bodies, *State ex rel McCrate v Rhodes,* 349 Mo 1071; 163 SW2d 978 (1942). Therefore, to the extent parol evidence was necessary to establish that the substituted waiver of notice was the correct waiver, it was admissible: this is especially true where, as here, it is not even clear that giving notice was that type of action of which an official record was required to be kept, since MCL 340.63 merely required that notice be given. The action of the school board members in waiving notice of the December 30 meeting did not invalidate the December 30 resolution. Since each of the members of the school board was in fact notified of the December 30 meeting and since the teachers raised no allegations of prejudice resulting from either the manner of notice or from the absence of the single member of the school board, we do not agree with the teachers that the claimed irregular-

---

[8] The circuit court's decision that this waiver of notice was in fact genuine is supported by the evidence on appeal.

ities in noticing the December 30 meeting require reversal. *Cf., Royal Oak Sch Dist v Schulman,* 68 Mich App 589, 593; 243 NW2d 673 (1976), *Saginaw County v State Tax Comm,* 54 Mich App 160, 167–168; 220 NW2d 706 (1974), *aff'd sub nom Emmet County v State Tax Comm,* 397 Mich 550; 244 NW2d 909 (1976).

The teachers also attack the adequacy of public notice of the December 30 meeting. MCL 15.253; MSA 4.1800(3) (repealed by 1976 PA 266, eff. January 1, 1977), provided the applicable statutory requirements:

"Every board shall hold all public meetings at specified times and places, of which public notice shall be given. * * * Public notice of each special meeting and of each rescheduled regular or special meeting shall be given of the date, time and place of each meeting. Public notice shall be given by posting a copy of the notice prominently at the principal office of the body holding the meeting or at the public building in which the meeting is to be held * * * at least 12 hours prior to the time of the meeting in the case of special or rescheduled meetings."

The document relied upon and authenticated by the board as public notice is the same document which the board members purported to rely upon as a waiver of personal notice. This document fixes the time and date of the meeting and it also indicates that it is notice of a meeting. It does not, however, indicate that the meeting which was to be held was a school board meeting, nor does it indicate where the meeting was to be held. Thus, it does not comply with the statutory requirements above.

MCL 15.253 was enacted to insure the public a forum to express its opinions on subjects of interest before the board, *Haven v City of Troy,* 39 Mich App 219, 223–224; 197 NW2d 496 (1972).

Once again this *policy is not relevant to the issues raised in the instant litigation.* The teachers do not argue, nor could they argue, that the public was unaware of the meeting, or that greater public attendance would have resulted in a different outcome. Nor do the teachers allege that they were unaware of the meeting.

Because the record clearly indicates, first, that all interested parties were aware of the December 30 meeting; second, the general public was fully aware of the meeting and the dispute between the parties; and third, that the board substantially complied with the statute, we do not feel that those Michigan cases requiring strict compliance with the statutory procedure are apposite. Such cases, *Himes v City of Flint,* 38 Mich App 308; 196 NW2d 321 (1972), and *Keating International Corp v Orion Twp,* 51 Mich App 122; 214 NW2d 551 (1974), *aff'd* 395 Mich 539; 236 NW2d 409 (1975), involve notice to persons directly affected by the administrative acts who are unlikely to be aware of such acts absent the requisite notice. In those cases, strict compliance is necessary in order to fulfill the statutory purpose. The notice under consideration was posted in the school board offices where such notices were normally posted, and both time and date were given. *The notice contained the signatures of all members of the board.* We do not believe that failure to strictly comply with the statutory requirements mandates reversal under these circumstances, as we find this to be too minor a matter upon which to hinge the outcome of the instant litigation. Therefore, we hold that in these unique circumstances, substantial compliance with the statutory provision is sufficient. Given the fact that the school board's actions during this ten-day period received a great deal of

publicity, for the most part at the school board's behest, we find the basic policy underlying this statute to have been adequately fulfilled.

Because the facts do not vary with respect to the dismissal and § 6 hearings of the great majority of dismissed teachers, we need only consider a few cases individually. The standard by which the actions of the school board must be reviewed is set out in *Detroit v General Foods Corp,* 39 Mich App 180, 190; 197 NW2d 315 (1972), and MCL 423.206; MSA 17.455(6): "competent, material and substantial evidence" must support the findings upon consideration of the entire record of the proceeding below. As noted above, the Supreme Court in *Rockwell* at 640 determined that the only issue before the board during the § 6 hearings was whether or not a particular teacher was involved in the illegal strike. We need consider then only whether there is "competent, material and substantial evidence" appearing on the record to support the board's decision that each individual teacher dismissed was in fact participating in the strike. It was also noted above that the school board bears the burden of proof in this matter.

The evidence shows that the CEA, at its meeting of November 26, 1974, recommended that teachers withhold their services beginning December 2. On December 2 and 3, school was, in fact, cancelled due to inclement weather and teachers were not to report until December 4. On that day, the dismissed teachers did not report for school and did not comply with the absentee procedure. In addition, the head of the CEA admitted that a strike was ongoing during the fall of 1974; and other tribunals have found this strike to have been an illegal strike based upon economic issues, one not excused by unfair labor practices committed on

the part of the school board. Taking each of these factors into account, the board purported to look to the teacher's absentee record during the two prolonged strike periods occurring in the fall of 1974 and to the teacher's presence or absence on December 27. Specific findings were made with respect to the teacher's utilization of the absentee reporting procedure and testimony was taken to indicate whether or not the teacher was observed picketing before one of the school buildings in the Crestwood district.

Under GCR 1963, 517.1, this Court must give due regard to the finder-of-fact's opportunity to assess the credibility of witnesses appearing before it and to weigh the evidence which it has heard. This Court will not "substitute its judgment on the facts for that of the fact-finding tribunal". *Williams v Arnold Cleaners, Inc,* 25 Mich App 672, 675; 181 NW2d 625 (1970). Nevertheless, as suggested in *Osborne v Bullitt County Bd of Ed,* 415 SW2d 607 (Ky App, 1967), given the unique role assigned to the school board in matters such as these, the Court must also pay close scrutiny to the findings of the board in order to assure that they are supported by the record. Judge Rashid found that three of the dismissed teachers, appellees herein, had substantially complied with the school board's absentee reporting procedure, and were therefore wrongfully terminated. S. Arnold, S. Buckholz and S. Howell each contacted the board with respect to their absence during the month of December, providing an excuse therefor. While each of these teachers was also absent during the September strike period, we agree with the circuit court that due process required that all teachers be extended the opportunity to absolve themselves of their earlier misconduct by attend-

ance on December 27. Persons who were unable to return to work and who notified the school of their incapacity to report for work were in compliance with school procedure.

The record indicates a substantial likelihood that appellees Arnold and Howell notified the school board by telephone early in December of their incapacity to report to work. Similarly, appellee Buckholz, due to the fortuitous circumstance that her mother worked in the superintendent's office, was found to have informed the school administration of her inability to report for work. In addition, the record indicates that appellee Arnold was unaware of the December 20 resolution in time to comply with the included order. As the burden of persuasion remained with the school board during these hearings, we do not believe that the circuit court erred in reversing the findings of the board with respect to these three appellees.

The circuit court also reversed the board with respect to nine other teachers who presented evidence of their absence from the Dearborn area during the time period in question. Notice of attempted delivery was left at the residence of each of these teachers, however, evidence presented in their behalf at the § 6 hearings indicated that this notice was ineffective as the individual was no longer likely to have received it. Appellees J. Goszyk, J. Hayes, M. Hutler, A. Robinson, A. Soutar, P. Valdori, L. Boroditsch, J. Cialone, and V. Drean presented evidence that they left the Dearborn area soon after the school board's December 20 resolution and did not return until after the December 27 "deadline" for responding. Since these appellees did not receive the written notice sent by the school board, and also cannot be

presumed to have benefited from the attendant publicity, the evidence presented on their behalf clearly rebuts the school board's prima facie case of wilful absence on December 27.

The evidence offered in favor of the remaining dismissed teachers is highly similar, and they may be considered by groups. Six teachers did not receive timely notice by mail. One of these six, however, was observed pciketing on December 27, thereby indicating he was indeed aware of his obligations on that date. The remainder offered no further evidence to explain their absence on December 27 and were correctly presumed to have received notice of their duty of attendance under our ruling herein.

Several appellants offered evidence of appointments with physicians on December 27. None of these teachers, however, complied with the absentee procedure, even though all were in town. Other teachers offered evidence of limited absence from the area comprising only December 27 and one or two additional days. The school board's conclusion that these teachers received notice of attempted delivery or were otherwise made aware of the board's December 20 resolution and wilfully ignored their employment duties while also failing to comply with the absentee procedure is supported by the evidence and is not clearly erroneous.

Further, those teachers whose notice was signed on receipt by a member of their household or whose return receipt signature does not match their signature as it appears on school records may properly be presumed to have received notice under the familiar doctrine of imputed notice. The school board's decision adopted by the circuit court in those cases is also not clearly incorrect, given

the teachers' failure to comply with the absentee procedure. Finally, evidence that a teacher was confined to bed during the month of December is not adequate to rebut the prima facie case established by the board, absent compliance with the absentee reporting procedure.

Taking into account all the circumstances of this case, we agree with the circuit court in its disposition of this matter. The 12 appellee teachers placed sufficient evidence on the record to rebut the board's prima facie case. Evidence offered by the board to show participation in the strike, including evidence of the good faith attempt of the school board to notify the teachers of their employment duties on December 27, however, combined with the inadequacy of evidence offered in the remaining teachers' behalf, leads us to conclude that the school board's termination of the remaining teachers' employment was not clearly erroneous.

The teachers claim other issues which do not merit discussion or decision.

Affirmed. No costs, a public question being involved.